## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| DOUGLAS V. MASTRIANO<br>280 Mount Union Road,<br>Fayetteville, P.A. 17222<br><br>*Plaintiff,*<br><br>v.<br><br>NANCY PELOSI, in her official<br>capacity as Speaker of the United States<br>House of Representatives,<br>1236 Longworth House Office Building<br>Washington, D.C. 20515;<br><br>BENNIE G. THOMPSON, in his official<br>capacity as Chair of the Select Committee<br>to Investigate the January 6th Attack on the<br>United States Capitol,<br>2466 Rayburn House Office Building<br>Washington, D.C. 20515;<br><br>ELIZABETH L. CHENEY, in her official<br>capacity as Vice Chair of the Select<br>Committee to Investigate the January 6th<br>Attack on the United States Capitol,<br>416 Cannon House Office Building<br>Washington, D.C. 20515;<br><br>ADAM B. SCHIFF, in his official<br>capacity as a member of the United States<br>House of Representatives,<br>2309 Rayburn House Office Building<br>Washington, D.C. 20515;<br><br>JAMIE B. RASKIN, in his official<br>capacity as a member of the United States<br>House of Representatives,<br>2242 Rayburn House Office Building<br>Washington, D.C. 20515;<br><br>SUSAN E. LOFGREN, in her official<br>capacity as a member of the United States | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. ____ |

House of Representatives,                                       )
1401 Longworth House Office Building                            )
Washington, D.C. 20515;                                        )
                                                               )
ELAINE G. LURIA, in her official                               )
capacity as a member of the United States                      )
House of Representatives,                                       )
412 Cannon House Office Building                               )
Washington, D.C. 20515;                                        )
                                                               )
PETER R. AGUILAR, in his official                              )
capacity as a member of the United States                      )
House of Representatives,                                       )
109 Cannon House Office Building                               )
Washington, D.C. 20515;                                        )
                                                               )
STEPHANIE MURPHY, in her official                              )
capacity as a member of the United States                      )
House of Representatives,                                       )
1710 Longworth House Office Building                            )
Washington, D.C. 20515;                                        )
                                                               )
ADAM D. KINZINGER, in his official                             )
capacity as a member of the United States                      )
House of Representatives,                                       )
2245 Rayburn House Office Building                              )
Washington, D.C. 20515;                                        )
                                                               )
SELECT COMMITTEE TO                                            )
INVESTIGATE THE JANUARY 6TH                                    )
ATTACK ON THE UNITED STATES                                    )
CAPITOL,                                                       )
Longworth House Office Building                                 )
Washington, D.C. 20515,                                        )
                                                               )
                                                               )
                          *Defendants.*                        )
_____)

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.   Plaintiff, Pennsylvania State Senator Douglas V. Mastriano ("Plaintiff"), brings this complaint seeking declaratory and injunctive relief that the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"), is unable to comply with the House Regulations for the Use of Deposition Authority (the "Deposition Regulations") and is therefore unable to conduct a compelled deposition of the Plaintiff, or any other witness who does not consent to being deposed.

2.   Central to this issue is the fact that this Committee lacks a Ranking Minority Member, or any members designated by the minority party.  Although Courts have previously held that, despite this defect, the Committee has the power to issue subpoenas, no Court has ever examined the issue of whether this particular Committee is able to comply with the Deposition Regulations which explicitly require certain actions to be taken by the Ranking Minority Member.

3.   This issue is distinguishable from prior litigation which dealt with the Committee's formation and its ability comply with the procedures for the issuance of subpoenas, which do not implicate any substantive rights of the witnesses.  The notice requirement being litigated in those cases was the required consultation with the Ranking Minority Member before issuing a subpoena - a requirement that is designed to protect the committee members and ensure that the minority is informed of the actions taken by the majority. However, that requirement does not implicate any substantive rights of the witnesses because the notice provides no avenue for the minority to block or otherwise challenge the issuance of the subpoena.

4.   In contrast, depositions are conducted behind closed doors and the lack of a

Ranking Minority Member or minority party representation does impact the substantive rights of the witness and, therefore, must be examined differently than prior litigation. Due to the secretive nature of deposition proceedings, the Regulations rely upon the two-party system to create an adversarial proceeding to protect the substantive rights of witnesses in the absence of a judge or public scrutiny.  When, as here, a committee lacks any meaningful representation by the minority party,[1] this fundamental purpose is frustrated, and the Regulations cannot be complied with by the Committee.

5.   Because the Select Committee has absolutely no authority to conduct compelled depositions, Plaintiff was willing to sit for a voluntary interview.  However, because Plaintiff is currently the Republican nominee for Governor of the Commonwealth of Pennsylvania, he asked the Committee to agree to certain prophylactic measures that would ensure that his participation would not run the risk of improperly influencing the Pennsylvania state election.  Unfortunately, the Committee refused to negotiate any terms of a voluntary interview that would prevent them from improperly influencing the election, thus necessitating this litigation.

6.   Accordingly, the focus of this complaint is *not* the legitimacy of the Committee.  Rather, it is the Committee's absolute inability to legally compel deposition testimony in compliance with the Regulations for Use of Deposition Authority. A properly appointed Ranking Minority Member is necessary for a witness, such as Plaintiff, to avail himself of the protections afforded to him in the Rules on the Use of Deposition Authority.

---

[1] Although the Committee does have two members who are nominally members of the Republican party, they are both lame-duck members who were chosen by the Democratic caucus because their ideology aligns more closely with the Majority than the Minority party.

## PARTIES

7.  Plaintiff is a sitting Senator for the Commonwealth of Pennsylvania and the Republican nominee for Governor of the Commonwealth of Pennsylvania in the November 2022 general election.

8. Defendant Nancy Pelosi is a Democratic member of the U.S. House of Representatives and Speaker of the House.

9.  Defendant Bennie G. Thompson is a Democratic member of the U.S. House of Representatives and Chairman of the Select Committee to Investigate the January 6th Attack on the United States Capitol. The subpoena at issue was issued to Plaintiff on Defendant Thompson's authority as the Select Committee Chairman.

10. Defendant Elizabeth L. Cheney is a member of the U.S. House of Representatives and of the Select Committee to Investigate the January 6th Attack on the United States Capitol, appointed by the Speaker of the House.

11. Defendant Adam B. Schiff is a Democratic member of the U.S. House of Representatives and of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

12. Defendant Jamie B. Raskin is a Democratic member of the U.S. House of Representatives and of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

13. Defendant Susan E. Lofgren is a Democratic member of the U.S. House of Representatives and of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

14. Defendant Elaine G. Luria is a Democratic member of the U.S. House of

Representatives and of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

15. Defendant Peter R. Aguilar is a Democratic member of the U.S. House of Representatives and of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

16. Defendant Stephanie Murphy is a Democratic member of the U.S. House of Representatives and of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

17. Defendant Adam D. Kinzinger is a member of the U.S. House of Representatives and of the Select Committee to Investigate the January 6th Attack on the United States Capitol appointed by the Speaker of the House.

18. Defendant Select Committee to Investigate the January 6th Attack on the United States Capitol is a select committee created by House Resolution 503 passed by the U.S. House of Representatives on June 30, 2021.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States.

20. This Court has personal jurisdiction over Speaker Pelosi because she sponsored H. Res. 503 and oversaw its passage in the House. Her office is in Washington, D.C.

21. This Court has personal jurisdiction over Chairman Thompson because he presides over the Select Committee and the Subpoena was purportedly issued from his office address in Washington, D.C.

22. This Court has personal jurisdiction over Defendants Elizabeth L. Cheney, Adam

B. Schiff, Jamie B. Raskin, Susan E. Lofgren, Elaine G. Luria, Peter R. Aguilar, Stephanie Murphy, and Adam D. Kinzinger because they serve as members of the Select Committee that issued the subpoena at issue to the Plaintiff from Washington, D.C.

23. This Court has personal jurisdiction over the Defendant Select Committee because it is located and operates in Washington, D.C.

24. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in Washington, D.C.

## STATEMENT OF FACTS

## I. Background of the Committee

25. The Select Committee was formed on July 1, 2021 in order to investigate the January 6th attack on the United States Capitol.  The resolution to create the Committee (the "Resolution") provided that "The Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader...The Speaker shall designate one Member to serve as chair of the Select Committee."

26. On July 21, 2021, Speaker Pelosi made the admittedly "unprecedented decision" to reject the Committee members proposed by House Republican Leader Kevin McCarthy, arguing that "the unprecedented nature of January 6th demands this unprecedented decision."

27. As a result of Speaker Pelosi's "unprecedented decision," the Committee has no members designated by the Republican Conference.  Instead, two nominal Republicans were chosen by the Democratic Caucus for inclusion, Elizabeth Cheney and Adam Kinzinger.  These two members were chosen by the Democrats because, although

nominally members of the Republican party, both follow ideologies that are inconsistent with their own party, instead choosing to pursue the priorities of the Democratic Caucus. Because no members of the minority conference were included in the panel, nobody was designated as Ranking Minority Member.

28. Though the term "Ranking Minority Member" is discussed in both the Resolution and the House Rules, it is never formally defined, nor is a procedure laid out in the House Rules to designate who the Ranking Minority Member of each committee shall be. The Resolution explicitly grants the Speaker the authority to designate the Committee Chair but is silent on her authority to designate the Ranking Minority Member. Through their silence, the Resolution and the House Rules allow this term to be defined through each separate Conference/Caucus' rules.

29. Under Rule 14 of the Republican Conference Rules of the 117th Congress, a member's designation as the ranking Republican member of a committee comes only through nomination by the Steering Committee and election by the Conference. Rule 13 does provide that, for a Committee, such nominations shall be made by the minority leader. Democratic Caucus Rule 33 similarly holds that such appointments shall be made by the Democratic Leader, if not in the majority. Both parties' rules note that designations need not follow seniority.

30. In the absence of a designation of Ranking Minority Member, Speaker Pelosi instead used her authority under the Democratic Caucus Rules to designate Rep. Cheney as "Vice Chair," a position defined under Rule 21 of the Democratic Caucus Rules, as "provid[ing] an opportunity for a junior [Democrat] Member to gain insight and experience into the workings of the committee." However, this selection does not alleviate

the structural deficit of the Committee where "Vice Chair" is not equivalent to "Ranking Minority Member."

31.     House Rule XI(2)(d) instructs that a committee chair shall designate "[a] member of the majority party . . . as vice chair of the committee." Although ideologically aligned with the Democratic Caucus, Rep. Cheney is still nominally a member of the Republican Conference of the House of Representatives and is not officially a member of the current majority party. Yet, on September 2, 2021, Chairman Thompson announced in a press release that "he has named Representative Liz Cheney (R-WY) to serve as the Vice Chair of the Committee." See Press Release, Bennie Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, Chairman Thompson Announces Representative Cheney as Select Committee Vice Chair (Sept. 2, 2021), https://january6th.house.gov/news/press-releases/chairman-thompson-announces-representative-cheney-select-committee-vice-chair.

32. Additionally, Republican Conference Rule 14(d)(1) further requires, among other things, that Republican ranking members "ensure that each measure on which the Republican Conference has taken a position is managed in accordance with such position on the floor of the House of Representatives." As Rep. Cheney is outspoken in her decision to follow the priorities of the Democratic Caucus, rather than the Republican Caucus, she clearly is not following Rule 14(d)(1). The lack of discipline by the Republican Conference indicates that neither she, nor the rest of the Republican Conference, consider her to be a "Ranking Minority Member" as that term is defined.  Instead, a "Vice Chair" title makes her more accountable to the Democratic Caucus.

33. The Resolution specifically provides,

(6) (A) The chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to section 3(b)(1) of House Resolution 8, One Hundred Seventeenth Congress.
. . .
(B) Depositions taken under the authority prescribed in this paragraph shall be governed by the procedures submitted by the chair of the Committee on Rules for printing in the Congressional Record on January 4, 2021.

34. Furthermore, the Regulations for Use of Deposition Authority (H41) explicitly require that certain actions taken by a committee involve the Ranking Minority Member. Some of these actions include, in pertinent part –

No. 2: Consultation with the ranking minority member shall include three days notice before any deposition is taken.

No. 5: A deposition shall be conducted by any member or committee counsel designated by the chair or ranking minority member of the Committee that noticed the deposition.  When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round.  One of the committee counsel shall be designated by the chair and the other by the ranking minority member per round.

No. 6: Deposition questions shall be propounded in rounds. The length of each round shall not exceed 60 minutes per side, and shall provide equal time to the majority and the minority. In each round, the member(s) or committee counsel designated by the chair shall ask questions first, and the member(s) or committee counsel designated by the ranking minority member shall ask questions second.

No. 10: The chair and ranking minority member shall consult regarding the release of deposition testimony, transcripts, or recordings, and portions thereof. If either objects in writing to a proposed release of a deposition testimony, transcript, or recording, or a portion thereof, the matter shall be promptly referred to the committee for resolution.

35. Speaker Pelosi was aware of these rules. The above referenced rules were in fact passed on January 4, 2021, several months prior to her rejection of proposed panel

members.

36.  Plaintiff's position is supported and articulated in detail in a letter on behalf of the House Republican Leader, Senator Kevin McCarthy. It states, in pertinent part, that the Speaker's failure to "properly constitute the Select Committee...makes compliance with the Select Committee's subpoena issuing authority and subsequent deposition authority of the House impossible."[2] Leader McCarthy's letter further explains numerous additional ways in which the Committee has acted and continues to act in a manner severely out of compliance with its own rules and regulations.

37. This Court has also taken the position asserted by both Plaintiff and Leader McCarthy, that, in order to show validity of a committee's subpoena, the committee "must conform strictly to the resolution establishing its investigatory powers." *Exxon Corp. v. F.T.C.*, 589 F.2d 582, 592 (D.C. Cir. 1978).

## II. Concerns about the Committee's Dissemination of Disinformation to Pursue Partisan Goals, Rather than Legitimate Legislative Function

38. In recent weeks, the Committee released edited interview clips of the testimony of another witness without appropriate or requisite context, portraying a highly partisan, wholly inaccurate, and inherently biased narrative. Such releases included statements from former Acting Secretary of Defense, Mr. Christopher C. Miller, which was not only misleading, but rather than waiting for a hearing, were submitted via Twitter, a social media platform that has been used by both sides of the political aisle in order to promote political disinformation.

39. Several members of the Democratic Party leadership openly and publicly stated that the intended goal of these hearings is to "paint the Republican party as irresponsible

---

[2] A true and correct copy of Leader McCarthy's letter is attached as Plaintiff's Exhibit "A."

and power hungry ahead of midterm elections." The ability of the Committee to influence the results of primary elections and the perception of millions of Americans regarding voluntary statements by individuals such as Plaintiff, cannot be interpreted as anything less than blatant efforts at manipulation of the American people and the democratic process.

40.     Despite these public statements, Plaintiff sought to provide the Committee with the requested information so long as the Committee allowed for safeguards against partisan disinformation. Plaintiff, by and through counsel, proposed that Plaintiff's counsel be permitted to record the interview along with the Committee who had already predetermined that they would record the interview. However, Plaintiff's efforts at achieving a compromise were wholly rejected by the Committee, who further refused to propose any other suggestions indicative of bipartisanship. This demonstrates Committee's intent to retain sole dominion over the information elicited during any interview, and more importantly, how any of Plaintiff's statements are disseminated to the American people, notably during election season.

41. Plaintiff's concerns would not exist if the Committee were properly constituted and able to follow the Deposition Regulations, as these rules contain a prophylactic measure to prevent one party from using deposition excerpts to spread disinformation:

> The chair and ranking minority member shall consult regarding the release of deposition testimony, transcripts, or recordings, and portions thereof. If either objects in writing to a proposed release of a deposition testimony, transcript, or recording, or a portion thereof, the matter shall be promptly referred to the committee for resolution.

42. This provision would prevent such edited and misleading clips from being distributed, as the ranking minority member would not consent to certain contextless

12

clips being distributed absent additional materials that would provide the appropriate context.  Absent such representation, we have a situation where one party is free to put out any edited clips they want in an effort to improperly influence the midterm elections.

43. In response to the Committee's outright refusal of Plaintiff's reasonable request, undersigned counsel again communicated Plaintiff's desire to reach an equitable agreement that would negate the risk of election interference while allowing Plaintiff to show his continued commitment to a fair and complete bipartisan investigation. Notably, Plaintiff's offer to provide a voluntary interview in lieu of a compelled deposition was not without precedent, where the Committee already had conducted voluntary interviews of Bernard Kerik and others.

44. The Committee remains unwilling to reach a mutually acceptable compromise in furtherance of its purported intent of information gathering. Its position reflects the intended consequence of placing Plaintiff in a position of losing Constitutionally protected rights and the protection of privileged information or facing public and false accusations by the Committee of non-compliance. To wit, in a letter from Defendant Chairman Thompson to Plaintiff's counsel, Defendant stated "the Select Committee will view Senator Mastriano's failure to appear and provide deposition testimony as willful non-compliance, which will force the Select Committee to consider additional options related to enforcement and contempt," without addressing Plaintiff's appeal rights at all.[3]

### III. Plaintiff Appeared as Ordered by the Subpoena, but the Committee Failed to Follow Proper Procedures to Begin the Deposition

---

[3] *See* Plaintiff's Exhibit C

45. Plaintiff is the Republican nominee for Governor and is currently engaged in a hotly contested general election race. On February 15, 2022, the Committee issued a subpoena to the Plaintiff,[4] commanding his appearance to provide deposition testimony regarding events leading up to and on January 6, 2022.

46. As the subpoena appeared to be facially valid, Plaintiff complied with the document demands and submitted the requested documents.[5]

47. As did other witnesses, Plaintiff objected, through counsel, to appearing for a compelled deposition based on the Committee's improper makeup and the Committee agreed to have him appear for a voluntary interview.

48. Despite the previous agreement to proceed by voluntary interview, Plaintiff's reasonable requests for some form of protection against the Committee releasing edited and misleading clips of his interview led to the Committee withdrawing their agreement to proceed by voluntary interview and instead demanded a compelled deposition, which they scheduled for August 9, 2022.

49. In an effort to avoid litigation and get the voluntary interview back on track, as well as to preserve the record, Plaintiff, through counsel, sent the Committee a letter, dated August 5, 2022, outlining his positions, both on the Committee's ability to comply with the Deposition Regulations, as well as his desires to work out an agreement.[6]

50. On August 8, 2022, the night before the deposition was to take place, Rep. Thompson sent Plaintiff's counsel a letter refusing to negotiate for a voluntary interview, while falsely claiming that "courts have *repeatedly* rejected these arguments," when in

---

[4] A true and correct copy of the subpoena is attached as Plaintiff's Exhibit "B."
[5] A copy of the cover letter accompanying the documents is annexed hereto at Exhibit "C."
[6] A copy of this letter is annexed hereto at Exhibit "D."

fact the cases cited deal only with the authority to issue subpoenas, not conduct depositions.[7]

51. As the parties were unable to reach a resolution, Plaintiff appeared at the date and time designated by the Committee for the deposition, with the intent to have his counsel inquire about the specific sections of the Deposition Regulation prior to being sworn in to create a record for this Court as to whether the Committee was able to comply with the Deposition Regulations.

52. First, counsel for the Plaintiff inquired as to whether the subpoena had actually been issued by the Chairman, as required.  This inquiry was prompted after noticing that the signature on the August 8, 2022 letter was absolutely identical to the one on the subpoena itself.



**Chairman or Authorized Member**

53. When the question was asked whether the Chairman had issued the subpoena or if a staffer had instead issued it using an autopen, the Committee representatives became upset and refused to answer, thus increasing suspicions that Chairman Thompson did not issue the subpoena or the letter.

---

[7] A copy of this letter is annexed hereto at Exhibit "E."

54. Next, Plaintiff's counsel asked about compliance with the Deposition Regulations and asked if the Committee representatives could identify which two staffers would be conducting the deposition, as required by paragraphs 5 and 6 of the Deposition Regulations. Again, notwithstanding the clear and unambiguous directives of the Deposition Regulations that "When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round. One of the committee counsel shall be designated by the chair and the other by the ranking minority member per round," the representatives of the Committee refused to respond or to even identify which committee counsel would be asking questions.

55. Once a record was clearly established that the Committee had made no efforts to comply with the Deposition Regulations, Plaintiff's counsel informed the Committee of this fact and announced that he and Plaintiff were going to leave, but would be happy to return if the Committee either wanted to reconvene in a manner that complied with the Deposition Regulations or wanted to work out a mutually agreeable solution to conduct a voluntary interview.

56. Oddly, a representative of the Committee then proceeded to start asking Plaintiff questions. When asked by counsel for Plaintiff what he was doing, the representative announced that the deposition had commenced and that Plaintiff was not permitted to leave while a deposition question was pending. Counsel for the Plaintiff then reminded the representative for the Committee that ordinarily deposition questioning cannot commence until after a witness was sworn – something that had not occurred as Plaintiff declined to be sworn in until after the Committee demonstrated that the deposition was convened in accordance with the Deposition Regulations. Plaintiff then departed the

16

session.

### VI. As a Result of the Committee's Flagrant Disregard for Congressional Rules, Plaintiff has no Choice but to Seek Judicial Intervention.

57. The purpose of the two-party system in the appointment of investigative committees is to protect against partisan abuse utilizing an atypical adversarial system, where party members on the committee serve as checks against one another. However, in this instance, the Committee appointed by Speaker Pelosi fails to include any semblance of bipartisanship where there are only two nominal Republican members, both of whom are ideologically and politically aligned with the Majority Party.

58. As a result of the defect caused by Speaker Pelosi's admittedly "unprecedented" decision to reject appropriate proposed Republican panel members, and the failure to properly designate a Ranking Minority Member, Plaintiff's significant and palpable concerns regarding the transparency and bipartisanship of the Committee are well founded.

59. The Regulations or the Use of Deposition Authority, through reliance on a bipartisan committee composition, ensure the preservation of a witness's right to appeal where only a member of the committee has standing to appeal. In this instance, the Committee failed to preserve this right in its structural deficit, in violation of the Constitutional rights of any witness, to include Plaintiff. This is inconsistent with the Supreme Court's ruling that targets of "legislative subpoenas retain their constitutional rights throughout the course of an investigation," and that recipients of such subpoenas retain their common law and constitutional rights with the respect to privileged information. *Trump v. Mazars U.S., LLP*, 140 S. Ct. 2019, 2032 (2020).

60. On information and belief, were the deposition to proceed, Plaintiff would be

required to assert several privilege objections in response to Committee questions.[8] This was even demonstrated by the first question that the Committee representative attempted to ask, which went directly to legislative function. A refusal to answer a question is permitted by the Regulations on the Use of Deposition Authority, only in instances where a witness asserts a preservation of privilege. In such cases, a ruling on assertions of privilege will come from the committee Chair.

61. Rep. Thompson is not an attorney and has demonstrated on several occasions through his communications regarding the testimony of Bernard Kerik that he lacks even a rudimentary understanding of the law governing privileges. Yet, if this Chair overrules any such objection, the witness may be ordered to answer. The Chair's ruling may be appealed, but only by another member of the committee, not the witness or his counsel.

62. Furthermore, refusal by a witness to respond to a question after being directed to answer may result in sanctions against the witness, except in circumstances where the ruling of the Chair is reversed on appeal. For this reason, it is especially problematic that the Committee failed to include a Ranking Minority Member or any meaningful minority representation. As evinced by public statements made by the Committee, assertion of the right of privilege and the protections of the constitutional right of appeal are unabashedly disregarded and trampled by the Committee's partisan goals.[9]

63. In *Yellin v. United States*, 374 U.S. 109, 114 (1963), the Supreme Court held that

---

[8] *See* Plaintiff's Exhibit B

[9] In fact, the Committee has stated that any assertion of rights by a witness would be seen by the Committee as "willful non-compliance," which could result in the Committee's invocation of "contempt of Congress procedures." The Committee has shown a preference for claiming a witness is "willfully non-compliant" instead of reaching a mutually amenable agreement with cooperating witnesses in order to further any fact-finding goals. Bernie Kerik plans to publicly release documents demanded by Jan. 6 committee - POLITICO

a congressional committee seeking disclosures from private persons must be "held to observance of its rules," which "assure a witness fair treatment." *Id.* at 116. When, as here, the Committee asserts an extraordinary entitlement to compel sworn testimony and threatens to violate a witness's right to assert privilege, "[i]t is not too exacting to require that the Committee be … meticulous in obeying its own rules," *Id.* at 124. Furthermore, this Court has noted as recently as May 2022, in *Republican Nat'l Comm. v. Pelosi*, that "a legislative investigation may be forced to yield when it threatens a 'dissipation of precious constitutional freedoms.'" Civil Action 22-659 (TJK) (D.D.C. May 1, 2022) *(quoting Watkins v. U.S.,* 354 U.S. 178, 205 (1957)).

64. In filing this lawsuit, it is not Plaintiff's intent to circumvent Congress' legislative power to address the attack on the Capitol on January 6, 2021. Instead, Plaintiff has been forced to bring this lawsuit[10] in order to ensure that the events of that day are not used as a pretense to manipulate the American public and pre-determine electoral outcomes by disregarding the Constitutional rights of members of the Republican Party.

## CLAIM I

### (Declaratory Judgement)

65. Repeats and realleges all the allegations set forth above as if fully alleged herein.

66. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning the following matters:

---

[10] In *RNC v. Pelosi,* the Court stated,

 "when a litigant whose rights have been 'jeopardized' by a committee's failure to follow its own rules challenges that failure, the Court's determination of what the rules require is constrained. *See Metzenbaum*, 675 F.2d at 1287. The Court may intervene if doing so "requires no resolution of ambiguities." *See United States v. Durenberger*, 48 F.3d 1239, 1244 (D.C. Cir. 1995).

*RNC v. Pelosi*, Civil Action 22-659 (TJK) (D.D.C. May 1, 2022). Similarly, in the present case, the House Rules on the Use of Deposition Authority are wholly unambiguous, necessitating the Court's intervention only in holding the Committee to its own clear-cut, well defined, and precise rules.

a) Whether a Committee which lacks a Ranking Minority Member or any representation by members appointed in consultation with the Minority Leader can comply with the Regulations on the Use of Deposition Authority;

b) Whether Plaintiff is required to sit for a compelled deposition.

67. All necessary parties are before this Court.

68. Plaintiff does not have an adequate remedy at law.

69. Judicial declarations are necessary and appropriate at this time to enable the parties to ascertain their rights and duties to each other.

70. Based upon the foregoing, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §2201, determining as follows:

a) Subpoenas that are issued by congressional staffers using an "autopen" to affix the Chairman's signature are invalid and unenforceable;

b) This Committee is unable to comply with the Regulations on the Use of Deposition Authority and is therefore unable to conduct any compelled depositions, absent the consent of the witness;

c) Plaintiff is not required to sit for a compelled deposition.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants and to order the following relief:

a) A declaratory judgment that Plaintiff is not required to sit for a compelled deposition;

b)   An award in favor of Plaintiff for its reasonable expenses, including attorneys' fees

and costs, incurred; and

c)   Any and all other relief that the Court deems just and proper.

Respectfully Submitted,

Timothy C. Parlatore, Esq.
Parlatore Law Group, LLP
*Attorneys for the Plaintiff*
One World Trade Center, Suite 8500
New York, New York, 10007
212-679-6312
timothy.parlatore@parlatorelawgroup.com

21