# Berke | Farah LLP
### Attorneys at Law

701 8ᵗʰ St NW, Suite 620  •  Washington, DC  20001  •  eberke@berkefarah.com  •  202.517.0585
www.berkefarah.com

May 27, 2022

The Honorable Bennie G. Thompson
Chairman
Select Committee to Investigate the January 6th Attack
on the United States Capitol
Washington, DC  20515

Dear Chairman Thompson:

On behalf of my client, House Republican Leader Kevin McCarthy, I write in response to your May 12, 2022 letter ("May 12 Letter") and attached subpoena from the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee").  As Leader McCarthy wrote to you in response to your letter dated January 12, 2022 ("January 12 Letter") – and to which he heard no response from the Select Committee for over four months – the lawless violence on January 6, 2021 was inexcusable and wrong.  Our Capitol should never have been compromised and those who committed such lawless violence that day deserve to face legal repercussions and full accountability.  Moving forward, the American people need to feel confident that our Capitol is secure.

Congress has a constitutional obligation to conduct rigorous oversight as part of this country's founding principles of checks and balances and separation of powers.  The Supreme Court of the United States has confirmed that the issuance of subpoenas "has long been held to be a legitimate use by Congress of its power to investigate."[1]  This power is essential to a legislative function and is as "penetrating and far-reaching as the potential power to enact and appropriate under the Constitution."[2]  Of course, Congress's subpoena authority is not without limitation.  Indeed, the Supreme Court has stated that "[a]lthough the power to investigate is necessarily broad it is not unlimited."[3]  When Congress's power of inquiry "is justified as an adjunct to the legislative process, it is subject to several limitations."[4]  Among those is the requirement that a committee have a valid legislative purpose.  And it is not enough that a committee have a valid legislative purpose as a general matter; rather, every inquiry that the committee makes must also satisfy that

---

[1] *McGrain v. Dougherty*, 273 U.S. 135 (1927).
[2] *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 504 n.15 (1975) (quoting *Barenblatt v. United States*, 360 U.S. 109, 111 (1959)).
[3] *Eastland*, 421 U.S. at 504 n.15.
[4] *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020)

### Navigating the Law of Politics

legal requirement.[5]  As such, all valid and lawfully issued subpoenas must be respected and honored.  Unfortunately, the words and actions of the Select Committee and its members have made it clear that it is not exercising a valid or lawful use of Congress' subpoena power.  In fact, the Select Committee is not even operating in compliance with the rules its own members voted to put in place.

To begin, the Speaker has failed to act in accordance with the Rules of the United States House of Representatives ("Rules of the House" or "House Rules") she put forth, and as a result, the Select Committee has operated both in composition and manner that deviates from the duly authorized Resolution that created it.  The Select Committee failed this mandate from the outset when Speaker Pelosi violated 232 years of continuous precedent by refusing to allow the minority party to select its representation on the committee.  It has since engaged in a series of actions that further distance it from its authorizing resolution in violation of the House Rules and precedents.  At no time in the history of the House has the majority denied the minority the right to select its representation nor constituted a Congressional committee in violation of the Rules of the House.  And at no time in the history of the House has the majority failed to honor the House's deposition and subpoena authority.

To be sure, the Constitution grants broad authority for the House to draft its own rules.  Specifically, Article I, Section 5, clause 2 states, "[e]ach House may establish the Rules of its proceedings."  And rightly so.  Of course, once established, the idea that the separation of powers or the Rulemaking clause itself allow the House to toss aside the rules it drafts, debates, and passes is as nonsensical as it is undemocratic.

Specifically, the Select Committee's authorizing resolution, H.Res. 503, states that the "Speaker shall appoint 13 members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader."  The Speaker did not appoint 13 members to the Select Committee.  The Speaker did not appoint five members after consultation with the minority leader.  To be clear, while it is undemocratic to not allow the minority party to select its representation on the Select Committee, the violation of the Rules of the House did not occur until the Speaker failed to adhere to the Resolution passed by the House.  H.Res. 503 is a brief resolution, and the section on Composition is unambiguous.  There is no justifiable excuse for the Select Committee or the Speaker to fail to adhere to the required "Appointment of Members" clause.  Federal courts, including the Supreme Court, have confirmed that "[t]he competence of

---

[5] *Kilbourn v. Thompson*, 103 U.S. 169, 204 (1880), *Wilkinson v. United States*, 365 U.S. 399, 408-09 (1961) highlighting that in order for a subpoena to be valid, the underlying investigation must meet three general criteria, that the Committee's investigation of the broad subject matter area must be authorized by Congress; the investigation must be pursuant to "a valid legislative purpose," and that the specific inquiries must be pertinent to the broad subject matter areas that have been authorized by Congress.

the tribunal must be proved as an independent element,"[6] and that "[a] tribunal that is not competent is no tribunal.... ."[7]

In addition to the failure of the Speaker to properly constitute the Select Committee within the structure voted on and approved by the majority of the House, the subsequent decisions to deny the minority even the patina of representation of a Ranking Minority Member makes compliance with the Select Committee's subpoena issuing authority and subsequent deposition authority of the House impossible.  Specifically, for the Select Committee to issue a subpoena, H.Res. 503 provides, "[t]he Chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to Section 3(b)(1) of House Resolution 8, One Hundred Seventeenth Congress."  You have named Representative Cheney as the Vice Chair of the Select Committee, as she was appointed as one of the original eight appointments by the Speaker and not appointed in consultation with the minority leader – and she is clearly not the ranking minority member.  In order for you, as the Chair of the Select Committee, to comply with the dictates of H.Res. 503, it is unclear which member of the Select Committee you consulted with in accordance with H.Res. 503 prior to issuing the subpoena for deposition testimony.

Once a subpoena for a deposition has been properly issued, House Resolution 8 ("H.Res. 8") outlines the requirements and procedures in place for House depositions.  Specifically, H.Res. 8 states, "[d]epositions taken under the authority prescribed in this subsection shall be subject to regulations issued by the Chair of the Committee on Rules and printed in the Congressional Record."  The 117th Congress' Regulations for the Use of Deposition Authority ("House Deposition Regulations") require "consultation with the ranking minority member shall include three days' notice before any deposition is taken.[8]  Yet it is unclear whether you, as the Chair of the Select Committee, complied with the dictates of H.Res. 8 and the House Deposition Regulations, because it is unknown which member of the Select Committee, if any, you consulted with, for purposes of House Deposition Regulation 2.  The House Deposition Regulations similarly require that when depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round.[9]  One of the committee counsels shall be designated by the chair and the other by the ranking minority member per round.  In order for you, as the Chair of the Select Committee, to conduct proceedings that comply with the dictates of House Rules, it is unclear which counsel was designated by the ranking minority member, given the fact that the letters from the Select

---

[6] *United States v. Reinecke*, 524 F2d 435 (D.C. Cir 1975) (citing *Christoffel v. United States*, 338 U.S. 84, 90 (1949).
[7] *Id.*
[8] 117th Congress Regulations for Use of Deposition Authority, Committee on Rules, House of Representatives, Jan. 4, 2021.  *See* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://rules.house.gov/sites/democrats.rules.house.gov/files/RegulationsfortheUseofDepositionAuthority117th.pdf (visited on May 18, 2022).
[9] *Id.* at Regulation 5.

Committee and attached subpoena appear to fail this requirement at every turn. But to be clear, while many House Rules and accompanying regulations allow for Rules to be waived when there is an agreement between a Chair and Ranking Member, or when there is a vote of the committee, the Deposition Regulations contain no such provision. This is because the House Deposition Regulations were not drafted for the convenience of the Chair issuing the deposition, but to protect and defend the rights of the minority and the rights of the deponent. Here, those institutional protections and defenses seem to be ignored.[10]

The principle that a Congressional committee must adhere to its applicable rules in pursuit of the enforcement of its subpoenas has resulted in convictions for contempt of Congress being overturned. In *Yellin v. United States*, 734 U.S. 109, the Supreme Court reversed a conviction for contempt of Congress when it determined that the Congressional committee failed to adhere to its own rules regarding procuring witness testimony: "The committee prepared the groundwork for prosecution in Yellin's case meticulously. It is not too exacting to require that the Committee be equally meticulous in obeying its own rules." *Id.*

How then does the Select Committee justify its investigation considering Speaker Pelosi's failure to compose the Select Committee within the confines of H.Res. 503? Why has the Select Committee engaged in the deprivation of minority rights to such an unprecedented nature and failed to follow the House Deposition Regulations?

With respect to the legislative purposes analysis, Select Committee members have repeatedly confirmed the goals the Select Committee has been pursuing are ones that the Supreme Court has determined are not valid legislative tasks. For instance, numerous Select Committee members have said that their goal is to tell the American public a story about the events on January 6. Select Committee Member Jamie Raskin has stated, "We will expose every facet ... and support the story of the worst presidential political offense"[11] and that "we are systematically breaking it down and figuring out the kinds of relationships and connections that need to be exposed,"[12] so that "we can tell a complete story to the American people about how this took place."[13]

Select Committee Vice Chair Liz Cheney has similarly stated, "we're telling the American people the story of what happened . . . laying out the full picture of what really happened . . . , is

---

[10] We also note that the place of testimony for the May 31, 2022 deposition included in the subpoena simply states, generically, "United States Capitol Building, Washington, DC 20515." May 12 Letter, at Subpoena Attachment.
[11] Jamie Raskin Says June Hearings 'Will Expose Every Facet' of Insurrection (newsweek.com)
[12] *See* https://www.cnn.com/2021/09/22/politics/january-6-committee-investigation-latest/index.html?utm_source=twCNNp&utm_medium=social&utm_content=2021-09-22T18%3A34%3A05&utm_term=link (visited on May 18, 2022).
[13] Rep. Jamie Raskin Says Jan. 6 Committee Will Drag 'Trump Confidants' In Front of Cameras in Primetime, and Soon (msn.com) (visited on May 18, 2022).

going to be what our focus is,"[14] and "[w]e must know what happened every minute of that day. . . every phone call every conversation. . ."[15] Select Committee Member Adam Kinzinger has likewise stated: "Looking forward to getting a full accounting of everything that happened in the Trump White House on, before, and after January 6th. And we're just getting started."[16]

Indeed, when describing the purpose of the Select Committee's investigation, you yourself stated, "[w]e'll tell the story about what happened . . .", "[p]eople send us here to make sure we present the facts,"[17] and "the hearings will work to tell a story of what happened on Capitol Grounds . . . ."[18]

However, the Supreme Court has made clear that exposure for purposes of telling a story is not a valid legislative purpose, and not a valid use of the subpoena authority granted to Congress under the Constitution. If those objectives qualified as valid legislative purpose, then Congress's subpoena power would be limitless. But as the Supreme Court has determined, Congress has no "general power to inquire into the private affairs and compel disclosure."[19] The Court made clear that Congress cannot use the power to compel disclosure to expose for the sake of exposure.[20] So when you, Representatives Raskin, Cheney, Kinzinger, and others have stated that the Select Committee's purpose is to tell people a story about what happened, they are conceding that the Select Committee is pursuing a purpose that the Supreme Court has determined is not a valid use of Congressional subpoena authority.

The other purposes that Select Committee members have articulated similarly run headlong into Supreme Court cases that define valid legislative tasks. Representative Raskin has stated, "it's an overwhelming task because we're talking about one of the largest crimes in American history, involving thousands of people and thousands of potential offenses,"[21] and that the Select Committee will issue a report that will be "profuse in setting forth crimes that have not yet been alleged."[22] Representative Adam Schiff went so far as to indicate that the constitutionally independent Department of Justice under the direction of Attorney General Garland would act at

---

[14] *See* https://www.cnn.com/2021/09/22/politics/january-6-committee-investigation-latest/index.html?utm_source=twCNNp&utm_medium=social&utm_content=2021-09-22T18%3A34%3A05&utm_term=link (visited on May 18, 2022).
[15] *See* https://www.rollingstone.com/politics/politics-news/cheney-investigate-trump-capitol-attack-communications-1203084/ (visited on May 18, 2022).
[16] *See* https://twitter.com/RepKinzinger/status/1441195207135948811?s=20 (visited on May 18, 2022).
[17] Jan. 6 committee to hold public hearings in June - ABC News (go.com) (visited on May 18, 2022).
[18] Jamie Raskin Says June Hearings 'Will Expose Every Facet' of Insurrection (newsweek.com) (visited on May 18, 2022).
[19] *McGrain*, 273 U.S. at 173–74; *Trump*, 140 S. Ct. at 2032.
[20] *Watkins v. United States*, 354 U.S. 178, 200 (1957), *Trump*, 140 S. Ct. at 2032
[21] *See* https://www.cnn.com/2021/09/22/politics/january-6-committee-investigation-latest/index.html?utm_source=twCNNp&utm_medium=social&utm_content=2021-09-22T18%3A34%3A05&utm_term=link (visited on May 18, 2022).
[22] Post Politics Now: Raskin expects 'crimes that have not yet been alleged' in Jan. 6 report (msn.com) (visited on May 18, 2022).

the behest of Congress by stating, "we have additional tools now that we didn't before, including a Justice Department that may be willing to pursue criminal contempt when people deliberately flout compulsory process."[23]

But this is not a valid legislative purpose either, as Supreme Court precedent makes clear. Indeed, Congress has no power of law enforcement and may not issue a subpoena for the purposes of "law enforcement" because "those powers are assigned under our Constitution to the Executive and the Judiciary."[24] And rightly so, and as Leader McCarthy has stated from the outset, every person who committed lawless violence on our Capitol on January 6th should be prosecuted. It is exclusively the province of the executive branch and the judicial branch to conduct those proceedings in accordance with the law.[25]

While Select Committee members make clear that they are pursuing purposes through the subpoena tool that the Supreme Court has determined are not valid legislative purposes, it is also clear that the Select Committee is operating outside the bounds of the rules that the members of Congress voted to put in place. The Select Committee's failure in this regard is fatal to its attempt to compel compliance with this subpoena. As noted above, the oversight and ancillary subpoena authority of any committee is rooted solely in its legislative purpose. Here, the House voted to create the Select Committee and empowered it with a specific and precise purpose. H.Res. 503 was established to investigate the facts, circumstances, and causes related to the January 6, 2021 attack on the Capitol. Specifically, H.Res. 503 granted the Select Committee the following purpose:

> (1) To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process.
>
> (2) To examine and evaluate evidence developed by relevant Federal, State, and local governmental agencies regarding the facts and circumstances

---

[23] *See* https://www.axios.com/adam-schiff-january-6-committee-witness-testimony-cb094b7c-6cb5-42bd-997d-fcf8e7035145.html (visited on May 18, 2022).
[24] *Quinn v. United States*, 349 U.S. 155, 161 (1955), *Trump*, 140 S. Ct. at 2032.
[25] Reporting indicates that the Department of Justice has thoroughly pursued its constitutional obligation and more than 775 defendants have been arrested and more than 225 have pleaded guilty so far. *See* https://www.nbcnews.com/politics/justice-department/fbi-names-hundreds-jan-6-rioters-doj-needs-lawyers-prosecute-rcna22384 (visited on May 18, 2022).

> surrounding the domestic terrorist attack on the Capitol and targeted violence and domestic terrorism relevant to such terrorist attack.
>
> (3) To build upon the investigations of other entities and avoid unnecessary duplication of efforts by reviewing the investigations, findings, conclusions, and recommendations of other executive branch, congressional, or independent bipartisan or nonpartisan commission investigations into the domestic terrorist attack on the Capitol, including investigations into influencing factors related to such attack.

The House, through a vote of its members in the House Chamber, established a select committee, dictated its composition, and described its purposes and functions. The Select Committee has no more and no less power than that entrusted to it through the vote of the full House that created it. Unfortunately, as described more fully below, the January 12 Letter and the May 12 Letter and attached subpoena all fail to comport with the authorities vested by the House through H.Res. 503.

The letters and subpoena from you do not describe any specific inquiries that are pertinent to the broad subject matter areas entrusted to the Select Committee's investigative authority as required by House Rules and relevant Supreme Court precedent. In your correspondence, you advise "pursuant to the authorities set forth in House Resolution 503 and the Rules of the House of Representatives, the Select Committee to Investigate the January 6th Attack on the United States Capitol hereby transmits a subpoena that compels you to appear for a deposition on May 31, 2022."

Your January 12 Letter asking for a voluntary interview references many public statements that Leader McCarthy made on national network news stations on or after the attacks on January 6, and references private statements you have been made aware of through surreptitiously (and potentially illegally) recorded phone calls between the Republican Leader and others in House Republican Leadership and staff also made after January 6, 2021. There is nothing in the January 12 Letter indicating you have any reason to believe Leader McCarthy has any information that would have bearing on any valid investigative or legislative purpose that is within the confines of the authority granted to the Select Committee by the establishing resolution.

Without any indication of a nexus between what information is sought from the Republican Leader and a valid legislative purpose, it is unclear from your correspondence how the Select Committee is acting within the bounds of the purpose bestowed on it by the full House. Looking closely at the May 12 Letter, there are no topics, categories, or subject areas listed at all that the Committee specifically requests to learn from the Leader. There is merely a reference to your January 12 Letter.

Turning back to your January 12 Letter, it is mostly a recitation of public statements Leader McCarthy made either on national or local news stations or from the floor of the House. Of course, the Select Committee has no valid legislative interest or oversight authority to question the Leader about public statements he has already made to the press or in the House Chamber. Nevertheless, the letter goes on to state that you would like to question the Leader about then-President Trump's tweets, statements, and ultimately the vote that Leader McCarthy took on the floor of the House objecting to the certification of the electoral votes. While it is the duty of members to tell the public about their activities, and Leader McCarthy has certainly done so as is evidenced by the several news stories quoted and referenced in your January12 Letter, "the transmittal of such information by individual Members in order to inform the public and other Members is not part of the legislative or the deliberations that make up the legislative process."[26]

While it is unclear from the content of the January 12 Letter, surely the Select Committee does not take the position that asking the Leader about the former President's tweets is a valid legislative purpose or would even be within the scope of the "facts, circumstances, and causes of" the January 6th attack. Moreover, your January 12 Letter states, "[t]he Select Committee is aware that, notwithstanding the unacceptable violence that day, you nevertheless agreed to support the continued objections to the electoral votes. . . ." Certainly, you do not claim that the Select Committee has authority to subpoena and question a Member of Congress for a vote that 138 members of the House took, and that you yourself took on January 6, 2005?[27] If this in fact is the Select Committee's view of its proper purpose and powers, the mere attempt to exercise this power could well open Pandora's box and damn this institution to partisan "investigations" regarding the thoughts and intent of legislative votes of members by fellow members who disagreed with their vote.

It appears from the January 12 Letter that the Select Committee would like to interrogate the Leader about statements he made publicly to press or inquire about private phone conversations amongst and between GOP leadership. It is difficult to fathom how any of the information alluded to in your January 12 Letter would meet the threshold established by the Supreme Court in *Wilkinson v. United States* – not only that the Select Committee has a valid legislative purpose, but that the information sought is pertinent to the broad subject areas authorized for investigation.[28] However, it appears that if discussions with House Republican Leadership are of interest to the Select Committee, they can clearly be testified to by the Select Committee Vice Chair, who was also privy to said discussions given her participation as then-Chair of the House Republican Conference.

---

[26] *Hutchinson v. Proxmire, 443 U.S. 111, 113 (1979)*.
[27] Final Vote Results for Roll Call 7 (house.gov) (visited on May 18, 2022).
[28] *Wilkinson v. United States*, 365 U.S. 399, 408-09 (1961).

Moreover, the vagueness of the request that asks no questions, lists no subject areas of interest, provides no dates of inquiry, and contains no limitation of subject areas does not meet the obligation of Congress to takes its compulsory process seriously.  The correspondence to the Leader does not adequately provide notice on specific subjects to be questioned in any meaningful way.  Indeed, as the Supreme Court has held, "[i]t is obvious that a person compelled to [testify] is entitled to have knowledge of the subject to which the interrogation is deemed pertinent" and that the knowledge of those lines of inquiry "must be made available with the same degree of explicitness and clarity that the Due Process Clause requires."[29]

The Select Committee, as described and created through H.Res. 503, has a valid legislative purpose to look into the attack on the United States Capitol and help to determine why the Capitol was so unprepared, and even to recommend changes to the overly politicized security apparatus to ensure that such an attack does not happen again.  However, there is not even an attempt in your correspondence to the Leader to connect a valid legislative purpose of the Select Committee with the information you claim to need from the Leader to achieve the tasks set forth by H.Res. 503.  The Leader has no information about the security preparedness in the days and weeks leading up to the attack on the Capitol as Speaker Pelosi led the decision-making process during that time period.  The lack of a subpoena to Speaker Pelosi and her senior staff who would have such knowledge further speaks volumes about the chasm between the purpose that H.Res. 503 empowered the Select Committee and the purpose the Select Committee is actually pursuing.

In this instance, it is clear from your correspondence that the Select Committee has exceeded its constitutional constraints to exercise its power of inquiry as decreed by our Founding Fathers as further defined by the Supreme Court, and as assigned to you by H.Res. 503.

But the Select Committee's abuse of power does not begin or end with your correspondence to Leader McCarthy and the other Members it has attempted to question.  Indeed, as the Supreme Court made clear in a long line of cases involving congressional overreach and going back nearly 100 years, from *McGrain* to *Watkins* and *Quinn* to the recent political and legal negligence by this congressional majority in the *McGahn* and *Mazars* cases, the power of congressional compulsion is limited and must have a valid legislative nexus.[30]  While Congress maintains a vast and awesome power of constitutional oversight to serve as an important piece of our system of checks and balances and separation of powers, it is undemocratic for a majority party to attempt to use the full force of the federal government to attack perceived political rivals.

---

[29] *Watkins v. United States*, 354 U.S. 178, 215 (1957) (visited on May 18, 2022).
[30] *McGrain*, 273 U.S. at 173–74; *Watkins*, 354 U.S. 178, 200; *Quinn*, 349 U.S. 155, 161; *Trump*, 140 S. Ct. at 2032.

Nevertheless, the Select Committee has demanded testimony from staffers who validly applied for First Amendment permits.[31] It has subpoenaed the call records of private citizens and their financial records from banks while demanding secrecy of those requests not supported by law.[32] It has lied about the contents of documents it has received.[33] It has held individuals in contempt of Congress for exercising their Constitutional right to avail themselves of judicial proceedings.[34] It has subpoenaed former Trump Administration officials in blatant violation of Executive Privilege.[35]

Additionally, the Committee continues to mislead the public about historical and factual matters – as recently as May 12, 2022, in a press release discussing the subpoena at issue, the Select Committee stated "[w]hile Members of Congress typically testify voluntarily before committees when asked, in recent years the House Ethics Committee has issued a number of subpoenas to Members of Congress for testimony or documents. Historically, members have also been subpoenaed to provide information in other House investigations."[36] The Ethics Committee is the only committee in the House with an even bipartisan makeup, and specifically tasked with the authority to police members for alleged code of conduct violations, and as you are no doubt aware, there is only one instance in the modern era of the Ethics Committee subpoenaing a Member of Congress.

Therefore, in composition, in conduct, in press releases, public statements, interviews, and correspondence, the Select Committee is clearly not acting within the confines of any legislative purpose. Its only objective appears to be to attempt to score political points or damage its political opponents – acting like the *Democratic Congressional Campaign Committee* one day and the Department of Justice the next.

In light of the above-described deficiencies, it is unclear how the Select Committee believes it is operating within the bounds of law or even within the confines of the authorizing resolution. However, in an effort to better understand how it is that the Select Committee believes it has the authority to request testimony in light of constitutional restrictions and the House-passed resolutions and rules, please provide information and answers to the following questions:

---

[31] House Jan. 6 committee subpoenas 11 individuals, including Pierson and Mick Mulvaney's niece (cnbc.com) (visited on May 18, 2022).
[32] Congress's 1/6 Committee Claims Absolute Power as it Investigates Citizens With No Judicial Limits (substack.com) (visited on May 18, 2022).
[33] Jan. 6 committee admits to altering text message between Mark Meadows and Jim Jordan (msn.com) (visited on May 18, 2022).
[34] Scavino, Navarro held in contempt of Congress in 1/6 probe - ABC News (go.com) (visited on May 18, 2022).
[35] Meadows contempt vote poses thorny questions for DOJ | The Hill (visited on May 18, 2022).
[36] Select Committee Subpoenas Five Members of Congress | Select Committee to Investigate the January 6th Attack on the United States Capitol (house.gov) (visited on May 18, 2022).

1. A list of subject and topics the Select Committee would like to discuss with the Leader, and the constitutional and legal rationale justifying the request.

2. A copy of all documents the Select Committee would like to ask the Leader about or otherwise discuss with the Leader, and the constitutional and legal rationale justifying the request.

3. Who was the Ranking Minority Member you consulted in advance of issuing subpoenas as required by H.Res. 503, and in advance of depositions as required by H.Res. 8?

4. Who is the Ranking Minority Member and who is the minority counsel designated by the Ranking Minority Member for any deposition as required by the Deposition Regulations of the House, attached to the Subpoena and made part of the Rules of the 117th Congress by H.Res. 8.

5. Has the Select Committee and will the Select Committee adhere to H.Res. 8 Deposition Regulations by limiting questioning to one hour per side and alternating between majority and minority counsel?

I expressly reserve Leader McCarthy's right to assert any other applicable privilege or objection to the Select Committee's subpoena. I look forward to discussing these questions and procedural deficiencies with you or counsel to the Select Committee at the earliest convenience.

Very truly yours,

Elliot S. Berke