

**Timothy C. Parlatore, Esq.**
Managing Partner
timothy.parlatore@parlatorelawgroup.com
Direct:212-679-6312

August 5, 2022

Rep. Bennie G. Thompson, Chairman
January 6th Select Committee
1540A Longworth House Office Building
Washington DC 20515

    RE:    *Subpoena to Pennsylvania State Senator Douglas V. Mastriano*

Dear Rep. Thompson:

    I represent Pennsylvania State Senator Douglas V. Mastriano and am writing regarding the proposed upcoming voluntary interview, which I understand you are now demanding to be a compelled deposition. As we have communicated about previously, your committee is not legally able to conduct compelled depositions, which is why all of my clients have all offered to participate in voluntary interviews.

## EFFORTS TO CONDUCT VOLUNTARY INTERVIEW WHILE MINIMIZING RISK OF ELECTION INTERFERENCE

    Although Senator Mastriano is happy to cooperate with your committee, as he has nothing to hide, I do have concerns that are particular to him, given the conduct of the committee up to this point. Senator Mastriano is currently the Republican nominee for Governor and is engaged in a hotly contested general election race. Given the committee's demonstrated propensity for releasing edited clips of interviews without the requisite context to support a false partisan narrative (i.e. your recent tweet of edited and misleading portions of former Acting-SECDEF Miller to support a knowingly false claim by the committee about National Guard activations), I am concerned that there is a risk that your committee will do the same to Senator Mastriano. Members of your party like Sean Patrick Maloney, Democratic Campaign Chair, have openly admitted that the goal of the hearings you are conducting is intended to paint the Republican party as irresponsible and power hungry ahead of the midterms[1]. For this reason, my client has legitimate concerns that your committee may attempt to influence the outcome of the Pennsylvania state elections through the dissemination of disinformation.

    I have not raised these concerns with regard to any of my other clients, as this concern is very specific to Senator Mastriano as a candidate for office. I do not, however, want to let this derail our efforts to provide information to the committee, as long as we

---

[1] https://www.nytimes.com/2022/06/07/us/politics/jan-6-hearings-tv-democrats.html

Licensed to Practice by the States of New York and New Jersey
U.S. District Courts in New York, New Jersey, Connecticut, Pennsylvania, Texas, and the District of Columbia
Parlatore Law Group is a nationwide cloud-based law firm. Please send all correspondence electronically.
In the event that physical mail is required please use the central mailing address below.
www.parlatorelawgroup.com  One World Trade Center, Suite 8500, New York, NY 10007 

can ensure that proper safeguards are in place. In my communications with your staff, I proposed that I could make my own recording of the interview and even sign an agreement to keep that recording in escrow, to only be released in the event that the committee releases edited portions of Senator Mastriano's interview that require additional context, so as not to mislead the voters in Pennsylvania. I was informed by your staffer that you rejected this proposal and refused to make any counterproposals because you wish to retain sole dominion over the public narrative. Obviously, your refusal to even discuss this is concerning, as there is no downside to me holding a second recording of the interview, unless the committee does, in fact, intend to engage in disinformation with Senator Mastriano's interview and is afraid of any accountability for that disinformation.

By this letter, I am again asking to work out some form of prophylactic measure that will allow all parties to feel comfortable with the voluntary interview process and minimize the risk of any election interference through the dissemination of disinformation.

**THIS COMMITTEE IS UNABLE TO CONDUCT COMPELLED DEPOSITIONS**

As we have previously communicated about, leading you to agree to have Bernard Kerik proceed by voluntary interview, this committee lacks the requisite structure to conduct compelled depositions because it is not a bipartisan committee and lacks a Ranking Minority Member, as this position is designated by the Republican Steering Committee not the Speaker of the House.

In both our prior communications and in my discussions with your staff, you have missed the point of this argument by trying to focus on the speaker's ability to select members and argue that your committee is legitimate. While these arguments may have been raised by others, they are not the arguments I am raising with you. I am not litigating whether the committee is legitimate, whether you have the power to issue subpoenas, demand documents, or even conduct public hearings. My argument here is laser focused: the committee's inability to comply with the Regulations for the Use of Deposition Authority deprives this committee of the tool of compelled depositions.

**The Select Committee Lacks a Ranking Minority Member**

This particular Select Committee suffers from a structural flaw, as a direct result of Speaker Pelosi's admittedly "unprecedented" decision to reject the panel of members which Leader McCarthy had proposed to sit on the Select Committee. At the time, Leader McCarthy noted that:

> Speaker Pelosi's rejection of the Republican nominees to serve on the committee and self-appointment of members who share her pre-conceived narrative will not yield a serious investigation. The Speaker has structured this select committee to satisfy her political objectives. She had months to work with Republicans on a reasonable and fair approach to get answers on the events and

2

security failures surrounding January 6.  Instead, she has played politics.

While the immediate and obvious consequence of this decision was that Rep. Cheney and Rep. Kinzinger were the only nominal Republicans seated on the committee, there are secondary effects of this decision.  One such secondary effect of not seating any members nominated by the Republican Conference is that neither of these individuals was ever designated as Ranking Minority Member.

The resolution to create the Select Committee (the "Resolution") provided that "The Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader…The Speaker shall designate one Member to serve as chair of the Select Committee."  Though the term "Ranking Minority Member" is discussed in both this Resolution, as well as the House Rules, it is never formally defined, nor is a procedure laid out in the House Rules to designate who the Ranking Minority Member of each committee shall be.  Certainly, the Resolution to create the Select Committee, while explicitly granting the Speaker the authority to designate the Chair, does not give her authority to designate the Ranking Minority Member.  Instead, the House Rules, as well as the Resolution, through their silence, allow this term to be defined through each separate Conference/Caucus' rules.

Under Rule 14 of the Republican Conference Rules of the 117th Congress, a member's designation as the ranking Republican member of a Committee comes only through nomination by the Steering Committee and election by the Conference. Rule 13 does provide that for a Select Committee, such nominations shall be made by the minority leader.  Democratic Caucus Rule 33 similarly holds that such appointments shall be made by the Democratic Leader, if not in the majority.  Both parties' rules note that designations need not follow seniority.

In the absence of a designation of Ranking Minority Member, Speaker Pelosi has instead used her authority under the Democratic Caucus Rules to designate Rep. Cheney as "Vice Chair," a position defined under Rule 21 of the Democratic Caucus Rules, as "provid[ing] an opportunity for a junior [Democrat] Member to gain insight and experience into the workings of the committee."

Republican Conference Rule 14(d)(1) further requires, among other things, that Republican ranking members "ensure that each measure on which the Republican Conference has taken a position is managed in accordance with such position on the floor of the House of Representatives."  Obviously, Rep. Cheney is not following the requirements of Rule 14(d)(1) and the lack of any discipline by the Republican Conference indicates that neither she, nor the rest of the Republican Conference, consider her to be a "Ranking Minority Member" as that term is defined.  Instead, it appears that her position as "Vice Chair" makes her more accountable to the Democratic Caucus that selected her.

## Absent a Ranking Minority Member, the Select Committee Lacks the Ability to Conduct Depositions

The Resolution, as well as the House Rules on depositions require the involvement of the Ranking Minority Member to conduct depositions. The Resolution provides that:

> (6) (A) The chair of the Select Committee, upon consultation with the ranking minority member, may order the taking of depositions, including pursuant to subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to section 3(b)(1) of House Resolution 8, One Hundred Seventeenth Congress.
>
> (B) Depositions taken under the authority prescribed in this paragraph shall be governed by the procedures submitted by the chair of the Committee on Rules for printing in the Congressional Record on January 4, 2021.

The rules referenced, the Regulations for the Use of Deposition Authority (H41), require that certain actions be taken involving the Ranking Minority Member. Consider the following relevant sections:

> 2. Consultation with the **ranking minority member** shall include three days notice before any deposition is taken.
>
> 5. A deposition shall be conducted by any member or committee counsel designated by the chair or ranking minority member of the Committee that noticed the deposition. When depositions are conducted by committee counsel, there shall be no more than two committee counsel permitted to question a witness per round. One of the committee counsel shall be designated by the chair and **the other by the ranking minority member** per round.
>
> 6. Deposition questions shall be propounded in rounds. The length of each round shall not exceed 60 minutes per side, and shall provide equal time to the majority and the minority. In each round, the member(s) or committee counsel designated by the chair shall ask questions first, and the member(s) or committee counsel **designated by the ranking minority member** shall ask questions second.
>
> 10. The chair **and ranking minority member shall consult** regarding the release of deposition testimony, transcripts, or recordings, and portions thereof. If either objects in writing to a proposed release of a deposition testimony, transcript, or recording, or a portion thereof, the matter shall be promptly referred to the committee for resolution.

Obviously, these rules were passed on January 4, 2021, several months before Speaker Pelosi created this situation by rejecting Leader McCarthy's panel. This is one of the unintended consequences of that "unprecedented" decision.

### The Lack of a Truly Bipartisan Committee Infringes on the Rights of the Witnesses and Serves no Legitimate Investigative Purpose

Ordinarily, committees rely on the two-party system to protect against abuse. Using a somewhat adversarial system, each party acts as a check against the other, to ensure that rights are respected and procedures are followed. Depending on the committee and the subject matter, sometimes interests are united and a bipartisan push may lack the appearance of an adversarial system, but the checks and balances are still there if one party strays. However, in this Select Committee, no such adversarial system exists because even though there are two nominal Republican members, they were chosen because, at least on this issue, they are ideologically aligned with the opposing party. Despite the deeply divisive subject matter of this committee, the committee panel lacks any diversity of thought or predisposition.

As it relates to the deposition rules, my client has significant concerns that he is being set up for sanctions due to the Committee's refusal to respect the bounds of privilege and lack of any opposing viewpoints to act as a counterbalance. The deposition at issue is one that could involve several privilege issues. Yet, the Regulations for the Use of Deposition Authority rely upon an adversarial, bipartisan committee to ensure that these rights are preserved, as only a member of the committee has standing to appeal:

> The witness may refuse to answer a question only to preserve a privilege. When the witness has refused to answer a question to preserve a privilege, members or staff may (i) proceed with the deposition, or (ii) either at that time or at a subsequent time, seek a ruling from the Chair either by telephone or otherwise. If the Chair overrules any such objection and thereby orders a witness to answer any question to which an objection was lodged, the witness shall be ordered to answer. If a member of the committee chooses to appeal the ruling of the chair, such appeal must be made within three days, in writing, and shall be preserved for committee consideration. The Committee's ruling on appeal shall be filed with the clerk of the Committee and shall be provided to the members and witness no less than three days before the reconvened deposition. A deponent who refuses to answer a question after being directed to answer by the chair may be subject to sanction, except that no sanctions may be imposed if the ruling of the chair is reversed by the committee on appeal.

This regulation is particularly problematic as it relates to your committee, as the lack of any Republican representation in the committee means that no appeals will ever be made and you, as the chair, have already demonstrated through our prior

correspondence a lack of understanding of what legally constitutes a privilege. Thus, even with well-founded privilege objections, witnesses before this committee could wrongfully be subjected to sanctions.

## CONCLUSION

As I stated from the outset, Senator Mastriano has nothing to hide and is happy to answer any legitimate questions posed by the committee. However, with the upcoming general election, we need to have some protective measures in place to prevent any interference with that election from the dissemination of disinformation. I have proposed what I believe to be a reasonable arrangement that will assuage my client's concerns while also providing you with immediate access to the non-privileged information that you seek. Your refusal to even discuss this and instead demand a compelled deposition does not indicate any legitimate investigative interest and actually reveals an intent to misuse your committee to disseminate disinformation to improperly influence the outcome of an election.

In my discussions with your staff, they keep referring (without specifically citing) to prior court decisions on related, but distinct issues. To date, it appears that no court has been asked to weigh in on the specific issue that I am raising – your committee's inability to comply with the requirements of the Regulations for Use of Deposition Authority. If we cannot agree on a reasonable arrangement for a voluntary interview, then we will have little choice but to go to court and litigate this issue.

To be clear, Senator Mastriano will comply with his subpoena and appear for the deposition in the unlikely event that you are able to secure a Ranking Minority Member designation from the Republican Steering Committee. However, before Senator Mastriano is sworn in, I intend to go through the Regulations for Use of Deposition Authority and, if all provisions have not been complied with, Senator Mastriano and I will leave the session, only to return in the event that:

1. All provisions have been complied with by the committee;
2. A Judge rules that the committee does not need to comply with the rules; or
3. We work out a reasonable arrangement for a voluntary interview.

I truly do hope that you will reconsider your position and we can move forward with a voluntary interview.

Very truly yours,

Timothy C. Parlatore, Esq.